## In re Paoli Railroad Yard PCB Litigation

*Arnold E. Cohen,* for plaintiffs.
*Michael H. Malin,* for defendants.

DINUBILE, Jr., *J.,* May 16, 1990 — These actions, involving approximately 273 plaintiffs, were instituted (and consolidated under the above master docket) to recover personal injuries, and in some cases property damage, allegedly resulting from the use and disposal of dielectric fluid containing polychlorinated biphenyls (PCBs) used in transformers of railcars at the Paoli Railroad Yard in Chester County, Pennsylvania. Plaintiffs maintain that they were exposed to these PCBs either as residents adjacent to or as employees of the railroad yard. A number of defendants have been sued, including Monsanto Company, General Electric Company, SEPTA, Penn Central Corporation, Consolidated Rail Corporation (Conrail), National Railroad Passenger Corporation (Amtrak), Westinghouse Electric Corporation, the Budd Company and the City of Philadelphia. By order of January 12, 1990 these cases were assigned to this court by Administrative Judge Edward J. Blake. Pursuant to this assignment, the court has undertaken management of these cases; principally for discovery purposes. On April 19, 1990 the first discovery order

was entered. In the meantime, defendants have petitioned this court to transfer venue to Chester County under the doctrine of forum non conveniens as provided for in rule 1006(d)(1) of the Pennsylvania Rules of Civil Procedure. This motion has been vigorously contested by plaintiffs' counsel. The additional case of *Donald L'Tainen* (now included in the 273 total) has been transferred to this court for decision by The Honorable Samuel M. Lehrer by order of March 1, 1990. This same venue issue had been pending before him prior to Judge Blake's order. Although this court remains deeply engaged in management and resolution of discovery disputes, the court held a hearing on May 7, 1990 on the forum non conveniens issue in accordance with rule 1006(d)(2) of the Pennsylvania Rules of Civil Procedure. During this hearing the testimony before Judge Lehrer in the *L'Tainen* case also was considered. After review of the record, arguments and briefs of counsel, the court orders that these cases be transferred to Chester County for disposition.

Prior to a discussion of the reasons for the removal, it must be noted that similar cases emanating from the Paoli Railroad Yard are presently in litigation in federal court. They have been assigned to The Honorable Robert F. Kelly, Judge of the District Court of the Eastern District of Pennsylvania. On November 28, 1988, Judge Kelly granted the defendants' motion for summary judgment on the ground that there was insufficient acceptable scientific evidence presented by the plaintiffs either to prove that they had been exposed to PCBs in any greater degree than the rest of the general public or that any alleged injuries were caused by this exposure to PCBs. See *In re Paoli Railroad Yard PCB Litigation,* 706 F.Supp. 358 (E.D. Pa. 1988). This

issue is presently on appeal before the Third Circuit Court of Appeals. A similar decision, not related to the Paoli Railroad Yard, but involving PCB exposure as a possible cause of colon cancer, was rejected by the Superior Court of New Jersey. See *Rubanick v. Witco Chemical Corp.*, 542 A.2d 975 (N.J. Super. 1988). It is evident that regardless of the results of this venue issue, a decision of the Third Circuit concerning the validity of the plaintiffs' claims will have significant bearing on the outcome of these suits in state court. However, this court's opinion is limited solely to the issue of forum non conveniens.

The facts pertaining to this issue are not in dispute. Plaintiffs are divided into two categories, namely, those who live or lived adjacent to and those former or current employees of the railroad yard. Of the 273 plaintiffs before this court, 162 of them involve FELA claims. Of these 162 cases, 45 plaintiffs live in Philadelphia, or a total of 28 percent. Fifty-two live in Chester County, or a total of 32 percent. Of the remaining 40 percent of FELA cases, the plaintiffs live in several other surrounding counties of Philadelphia, as well as the states of New Jersey, Delaware, Maryland and Florida. Of the full total of 273 cases, 127 of the plaintiffs live in Chester County for a total of 47 percent. Fifty-two, or 19 percent, live in Philadelphia. Of 111 of the non-FELA cases, only seven defendants live in Philadelphia, or a total of 6 percent. The evidence contained in the record at the hearing indicated that both the counties of Philadelphia and Chester exert a great deal of their efforts in the trial and disposition of criminal cases. Despite this fact, Chester County's civil ready trial pool as of December 1989 consists of approximately 170 cases. The substantial majority of them are tried within six to 12 months. All but a small percentage of cases are tried

within a year and a half. The number of cases on the civil trial list in Philadelphia as of April 2, 1990 totals over 45,000, which includes approximately 6,553 asbestos cases. There has been a marked increase in the number of cases on the trial list from 1978 until 1989. In January 1978 there were approximately 7,000 cases available for trial. Today that figure has more than quadrupled. The time for disposition for a jury trial in Philadelphia on the major list would range anywhere from four to five and a half years.

The law involving the doctrine of forum non conveniens is clear-cut. The transfer is within the sound discretion of the trial judge. The standard on appeal is not whether the appellate court might have reached a different conclusion than that of the court below, but rather whether there was an abuse of this discretion. If there is any basis for the trial court's decision, it must stand. Plaintiffs' right to choose a forum must be given significant weight, but it is not absolute. The interest of the parties should be considered; including relative ease of access to sources of proof, availability of compulsory process, cost of litigation and view of the scene. Finally, the public interest is of major importance. It includes problems of court congestion and imposing jury duty upon people who have no substantial interest in the litigation. Litigation should not be piled up in congested centers rather than being handled at its place of origin. *Brown v. Delaware Valley Transplant Program,* 371 Pa. Super. 583, 538 A.2d 889 (1988); *McReynolds v. Benner Township,* 118 Pa. Commw. 215, 544 A.2d 566 (1988) and *Petty v. Suburban General Hospital,* 363 Pa. Super. 277, 525 A.2d 1230 (1987). Although there is little dispute as to these principles of law, the application of them has been litigated vigorously.

The relative interests of the parties, such as ease of access, etc., are evenly balanced. The court's ruling to transfer these cases is predicated upon the public interest element which it believes substantially outweighs plaintiffs' right to choose a forum of their choice.

Both sides have asserted the interest of the parties in support of their respective positions. The arguments pro and con basically counterbalance each other. Plaintiffs assert that many of defendants have corporate offices in Philadelphia and that the attorneys themselves are located here. Approximately 28 percent of plaintiffs in the FELA cases live in Philadelphia and 19 percent overall. Plaintiffs' further argue that many of the records of defendants are located here in Philadelphia. However, it is this court's finding that service of process, access to proof, and cost of litigation will be approximately the same regardless of where the case is tried. Many of the experts must come from all over the country, consequently, it would make little difference whether they had to appear in West Chester or Philadelphia. In this modern day and age, access to West Chester is certainly no more difficult for witnesses and litigants than it is to Philadelphia.

The compelling reason for the transfer, which overrides the plaintiffs' right to choose the forum, is the present condition of the Philadelphia court system. It is extremely overburdened. This situation, coupled with the fact that the cause of action arose in Chester County, the railroad yard is located there and the vast majority of the plaintiffs, 47 percent, are residents of Chester County, tilts the scale in favor of transfer. Although it is true that Chester County is much smaller than Philadelphia, its present case load will enable it to more expeditiously handle them than if they were to remain

here. Plaintiffs argue that the transfer would result in more than doubling Chester County's inventory of cases. However, this assertion overlooks the fact that the cases at this time are not ready for trial. Moreover, they all share the common issue of whether plaintiffs can present sufficiently acceptable scientific evidence concerning liability. The cases can be assigned to one judge for the disposition of this issue as was done in federal court. If plaintiffs survive summary judgment, it is likely that they can be tried together on the extent of exposure and causation issues. If plaintiffs again prevail, there may not be a need for 273 separate jury trials on damages. Cases could be categorized or grouped together for trial based upon similarity of injury, thus diminishing considerably the number of jury trials which would be required. It may be argued that if the management procedure is as workable as stated by this court, then why transfer them in the first place? Plaintiffs assert that since this court already is familiar with these cases; having issued a discovery order, participated in case management and developed a general knowledge of the legal issues pertaining to liability, that it makes little sense to transfer the actions to Chester County. However, for the case to remain in this forum would mean that this court would have to devote much of its energies to this matter at the expense of numerous other cases already on our overcrowded docket which have a stronger basis for being tried here. Plaintiffs further maintain that, in effect, Philadelphia County has strong ties to these cases on a public interest basis because much of the decision-making process involving the Paoli Railyard took place in Philadelphia. Assuming this to be the case, the fact remains that the cause of action did not arise in Philadelphia and the overwhelming majority of plaintiffs do not live here.

Finally, plaintiffs argue, under the dictates of Pa.R.C.P. 2103(b), that the only venue for the City of Philadelphia is here. They further cite the case of *Bortulin v. Harley-Davidson Motor Co.,* 115 Pa. Commw. 42, 539 A.2d 906 (1988) in support of their contention. However, this argument fails to take into consideration the JARA Constitutional Act of October 5, 1980, see 42 Pa.C.S. §20043 which provides that a political subdivision can be sued in a county other than where it is located. The act permits the governmental entity to be sued, inter alia, where the cause of action arose. In addition, *Bortulin* cannot be cited for the proposition that the only proper venue for the city in this case is Philadelphia. The Commonwealth Court merely stated in that case that proper venue was the county in which the governmental entity was located because it was also the county where the cause of action arose.

For the foregoing reasons, defendants' motion for change of venue is granted. However, because of the particular nature of this litigation, coupled with the fact that some of the suits have been pending since January 1988, it is imperative that discovery continue in an expeditious fashion. Consequently, in the event this court's decision is appealed, it shall retain jurisdiction of all matters in accordance with Judge Blake's order until ruled otherwise by a higher court.